UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

BETH A. RHODES, M.D.,

    Plaintiff,

    v.

SUTTER HEALTH, a California corporation, SUTTER GOULD MEDICAL FOUNDATION, a California corporation, THE GOULD MEDICAL GROUP, INC., a California corporation,

    Defendants.
_____/

NO. CIV. 2:12-0013 WBS DAD

ORDER RE: MOTION TO DISMISS AND MOTION FOR A MORE DEFINITE STATEMENT

----oo0oo----

    Plaintiff Beth A. Rhodes brought this action against Sutter Health, Sutter Gould Medical Foundation ("SGMF"), and The Gould Medical Group, Inc. ("GMG") alleging unlawful retaliation, constructive discharge, gender harassment, gender discrimination, failure to prevent discrimination, defamation, and intentional infliction of emotional distress. Currently before the court is the joint motion by Sutter Health and SGMF to dismiss plaintiff's employment-related claims for failure to state a claim pursuant

1

to Rule 12(b)(6) and for a more definitive statement as to plaintiff's claims for defamation and intentional infliction of emotional distress pursuant to Rule 12(e).

## I. Factual and Procedural Background

Plaintiff alleges that she was employed by GMG as a radiologist specializing in breast and body imaging from January 2008 through May 2011. (Compl. ¶ 9.) By the summer of 2008, she became concerned that a GMG protocol requiring pre-biopsy surgical consultations was medically unnecessary and delayed proper patient care. (Id. ¶ 11.) She also believed that the protocol was "essentially self-referral to the Group, Foundation and Sutter Health for monetary gain and amounted to Medicare fraud." (Id.) She further claims that, consistent with her obligation to the public to advocate for appropriate health care, she reported her concerns regarding the protocol to GMG's senior partners. (Id.)

According to plaintiff, GMG's chief partner retaliated against her for expressing her misgivings about the protocol by assigning her low value work. (Id. ¶ 13.) Because of this low value work, plaintiff alleges that she was forced to work longer hours, making appear as though she had "developed time-management issues." (Id.) She further contends that this low value work was one of the reasons she was denied an annual performance bonus. (Id. ¶ 34.)

In addition to the protocol requiring pre-biopsy consultations, plaintiff claims that she raised other patient care issues with senior GMG staff. (Id. ¶¶ 14-15, 21, 23.) She further alleges that, due to her advocacy for appropriate patient

2

care, members of GMG engaged in a "campaign of harassment and hostile work environment" against her.  (Id. ¶¶ 21-32.)  Included in this campaign were threats, (id. ¶¶ 16, 27, 43), false accusations and unfair criticisms, (id. ¶¶ 25, 28, 31), intentional interference with plaintiff's ability to care for patients, (id. ¶¶ 28, 29), and assaultive behavior (id. ¶ 33).  Plaintiff also heard that GMG and Sutter Health employees were spreading rumors that plaintiff was guilty of "bad behavior," that there was a "big file" compiled on her, and that she was "on thin ice" and "on the way out."  (Id. ¶¶ 30, 37, 43.)

In addition to the hostility directed at her personally, plaintiff also claims that GMG implemented a policy requiring shareholders and associates to live "in the vicinity" of the hospital in a gender discriminatory way, using it to fire two female radiologists but turning a blind eye to male members who lived in Dublin, San Ramon, Los Angeles, and Santa Fe, New Mexico.  (Id. ¶¶ 17-18.)  This, she alleges, was "typical of the preference given to male members of the Group to the detriment of the female members of the Group."  (Id. ¶ 18.)

Plaintiff alleges that she eventually contacted the independent ombudsman service at Sutter Health to complain about "harassment, gender discrimination, Medicare fraud, time care [sic] fraud and inappropriate patient advocacy."  (Id. ¶ 35.)  She also claims that she sent an email to GMG "that set out in no uncertain terms that the 'Surgical Consult Prior to Breast Needle Biopsy' protocol fraud had to stop as it constituted insurance billing fraud and Medicare and Medi-Cal billing fraud."  (Id. ¶ 38.)

3

1         Due to the stress of her working environment, plaintiff
2  contends that in December 2010, she was medically excused from
3  work.  (Id. ¶ 42.)  Initially, her leave was scheduled to last
4  through February 4, 2011, but was extended through May 27, 2011.
5  (Id.)  While she was on medical leave, plaintiff alleges that
6  several members of GMG warned her that she would be terminated.
7  (Id. ¶ 43.)  Specifically, she alleges that a fellow radiologist
8  informed her that her termination had been announced at meetings
9  and discussed with him by various senior partners.  (Id.)

10        At the end of her medical leave, plaintiff resigned
11 from her position with GMG.  (Id. ¶ 44.)  She contends that her
12 resignation was due to intolerable and hostile working conditions
13 that caused her both physical and emotional distress.  (Id.)  In
14 her view, defendants were offering her "a very lucrative salary
15 as a shareholder in exchange for acquiescing in the Group's
16 illegal conduct of fraudulent billing practices and provision of
17 sub-standard patient care."  (Id.)  Instead, "[s]he chose her
18 patients."  (Id.)

19        Plaintiff brings claims against three defendants: GMG,
20 SGMF, and Sutter Health.  She alleges that GMG was her employer,
21 (id. ¶ 9), and that "Sutter Health was her joint employer under
22 the 'integrated enterprise' theory," (id. ¶ 2).  She further
23 explains that GMG "is affiliated with Sutter Gould Medical
24 Foundation and Sutter Health.  The Foundation runs the business
25 side of the Gould Medical Group and the Group appoints three
26 members to the Foundation boards, and staffs quality assurance,
27 finance and other committees along with administrative members.
28 The Foundation is part of Sutter Health."  (Id. ¶ 10.)

Plaintiff has stated claims for (1) retaliation in violation of the federal False Claims Act, (2) retaliation in violation of the California False Claims Act, (3) constructive discharge in violation of public policy, (4) gender harassment in violation of the California Fair Employment and Housing Act ("FEHA"), (5) gender discrimination in violation of FEHA, (6) retaliation in violation of FEHA, (7) failure to prevent discrimination in violation of FEHA, (8) defamation, and (9) intentional infliction of emotional distress. (Docket No. 1.) Defendants Sutter Health and SGMF now move to dismiss claims one through seven on the ground that plaintiff failed to plead an employment relationship or an alternate theory of liability. (Docket No. 7.) They additionally move to dismiss claims four through seven on the ground that plaintiff has failed to properly exhaust administrative remedies. (Id.)

II. Judicial Notice

In general, a court may not consider items outside the pleadings when deciding a motion to dismiss, but it may consider items of which it can take judicial notice. Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994). A court may take judicial notice of facts "not subject to reasonable dispute" because they are either "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. Judicial notice may properly be taken of matters of public record outside the pleadings. See MGIC Indem. Corp. v. Weisman, 803 F.2d 500, 504 (9th Cir. 1986). The Ninth Circuit has also held that a court

may "consider certain materials--documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice--without converting the motion to dismiss into a motion for summary judgment." United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003).

Sutter Health and SGMF have requested that the court take judicial notice of six documents: (1) the Complaint of Discrimination filed by plaintiff with the California Department of Fair Employment and Housing, (2) the Amended and Restated Articles of Incorporation of Sutter Health, (3) the Amended and Restated Bylaws of Sutter Health, (4) the Amended and Restated Articles of Incorporation of Sutter Group Medical Foundation, (5) the Amended and Restated Bylaws of Sutter Group Medical Foundation, and (6) excerpts from Sutter Group Medical Foundation's 2010 Form 990.  (Docket No. 8.)

Item one, the complaint filed with the California Department of Fair Employment and Housing, is a public record and so it is appropriate for the court to judicially notice it. Harris v. City of Fresno, 625 F. Supp. 2d 983, 1010 n.11 (E.D. Cal. 2009).  However, the court will not take judicial notice of any disputed facts contained in the document.  See Lee v. City of L.A., 250 F.3d 668, 690 (9th Cir. 2001).

Items two through five consist of corporate articles of incorporation and bylaws.  Because the articles of incorporation of California corporations are public records filed with the Secretary of the State of California, the court may take judicial notice of items two and four. eBay Inc. v. Digital Point Solutions, Inc., 608 F. Supp. 2d 1156, 1164 n.6 (N.D. Cal. 2009).

6

1  While the court will take judicial notice of the articles of
2  incorporation, it will not assume that they were complied with by
3  defendants.  See id.  Items three and five are corporate bylaws
4  which, unlike articles of incorporation, need not be filed with
5  the California Secretary of State.  See Cal. Corp. Code § 211
6  (providing for adoption of corporate bylaws, but not including
7  any filing requirements).  They are not, therefore, public
8  records.  Moreover, they are not generally known or above
9  reasonable dispute.  Accordingly, the court will not take
10 judicial notice of them.  See Arbitration between Lemoine Skinner
11 III v. Donaldson, Lufkin & Jenrette, No. C 03-2625, 2003 WL
12 23174478, at *3 (N.D. Cal. Dec. 29, 2003).
13         Finally, defendants request the court to take judicial
14 notice of item six, SGMF's 2010 Form 990, which was filed with
15 the Internal Revenue Service.  That form is not a public record
16 and its contents are neither generally known nor above reasonable
17 dispute.  The court will not take judicial notice of SGMF's 2010
18 Form 990.
19 III. Analysis
20         A.   Motion to Dismiss
21         On a motion to dismiss, the court must accept the
22 allegations in the complaint as true and draw all reasonable
23 inferences in favor of the plaintiff.  Scheuer v. Rhodes, 416
24 U.S. 232, 236 (1974), overruled on other grounds by Davis v.
25 Scherer, 468 U.S. 183 (1984); Cruz v. Beto, 405 U.S. 319, 322
26 (1972).  "To survive a motion to dismiss, a complaint must
27 contain sufficient factual matter, accepted as true, to 'state a
28 claim to relief that is plausible on its face.'"  Ashcroft v.

1  Iqbal, 556 U.S. 662, ---, 129 S. Ct. 1937, 1949 (2009) (quoting
2  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  Under
3  this "plausibility standard," "[w]here a complaint pleads facts
4  that are 'merely consistent with' a defendant's liability, it
5  'stops short of the line between possibility and plausibility of
6  entitlement to relief.'"  Id. at 1949 (quoting Twombly, 550 U.S.
7  at 556-57).

        1.   Failure to Allege an Employment Relationship

        Plaintiff brings seven claims for which she must
demonstrate either an employment relationship or an alternate
basis for liability.  Claims four through seven are all brought
under the FEHA, "which predicates potential . . . liability on
the status of the defendant as an 'employer.'"  Kelly v.
Methodist Hosp. of S. Cal., 22 Cal. 4th 1108, 1116 (2000)
(quoting Cal. Gov't Code § 12926).  Claims one, retaliation in
violation of the federal False Claims Act ("FCA"), and two,
retaliation in violation of the California False Claims Act
("CFCA"), may only be brought against an employer.  United States
ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047,
1060 (9th Cir. 2011) (citing United States ex rel. Hopper v.
Anton, 91 F.3d 1261, 1269 (9th Cir. 1996)) (listing employer's
discriminatory act as third element of a FCA claim); LeVine v.
Weis, 90 Cal. App. 4th 201, 212 (2d Dist. 2001) (finding that
CFCA imposes liability only on employers).  Finally, claim three
is a claim for wrongful termination in violation of public
policy, relying on a violation of California Business and
Professions Code section 2056.  While section 2056 does prohibit
any "person" from penalizing a physician, Cal. Bus. & Prof. Code

§ 2056(c), California courts interpreting this section have noted that "only an employer can be liable for the tort of wrongful discharge." <u>Khajavi v. Feather River Anesthesia Med. Grp.</u>, 84 Cal. App. 4th 32, 38 (3d Dist. 2000). Therefore, a plaintiff cannot bring a claim for wrongful termination based on a violation of section 2056 against a defendant with whom he "had no employment relationship." <u>Id.</u>

Plaintiff alleges that she was employed by GMG. By contrast, nowhere does she allege that either Sutter Health or SGMF was also her employer. Instead, she argues that Sutter Health and SGMF should be held liable under the "integrated enterprise test."

Under the integrated enterprise test, multiple corporations may be considered a single employer for the purposes of determining liability. <u>Morgan v. Safeway Stores, Inc.</u>, 884 F.2d 1211, 1213 (9th Cir. 1989). Although the test was originally developed by the National Labor Relations Board in labor cases, California courts have applied the integrated enterprise test in FEHA and wrongful termination cases. <u>See, e.g.</u>, <u>Laird v. Capital Cities/ABC, Inc.</u>, 68 Cal. App. 4th 727, 737-38 (5th Dist. 1998) (applying test to claims arising under FEHA); <u>Martinucci v. S. Cal. Permanente Med. Grp.</u>, No. B215453, 2011 WL 1020043, at *17 (Cal. App. 2d Dist. Mar. 23, 2011) (applying test in wrongful termination case).[1]

---

[1] The integrated enterprise test, as adopted in California by the court in <u>Laird</u>, initially focused on whether a corporate parent could be held liable for the acts of its subsidiary. <u>Miller v. Swiss Re Underwriters Agency, Inc.</u>, No. CV 09-09551, 2010 WL 935697, at *2-3 (C.D. Cal. Mar. 15, 2010). Nowhere does plaintiff allege the existence of a corporate parent-subsidiary relationship between the parties. Other

9

It is not obvious that it would be appropriate for the court to utilize the integrated enterprise test in considering plaintiff's California and federal FCA claims.  Only a few courts have considered the integrated enterprise test in the context of claims under the federal FCA, and none have squarely held the test applicable to claims like plaintiff's brought under 31 U.S.C. § 3730(h).  Campion v. Ne. Utils., 598 F. Supp. 2d 638, 656 n.12 (M.D. Pa. 2009) (citing cases).  Further, plaintiff has cited and the court is aware of no case applying the integrated enterprise test in a CFCA case.  Because the court determines below that plaintiff has not alleged facts sufficient to satisfy the integrated enterprise test, however, it will not address the question of whether plaintiff could use that test to bring federal and California FCA claims against Sutter Health and SGMF.

There is a presumption that separate corporate entities have distinct identities, and plaintiffs bear a heavy burden under both California and federal law when they seek to rebut this presumption and hold multiple corporate entities liable as a single employer.  Laird, 68 Cal. App. 4th at 737.  When applying the integrated enterprise test, California and federal courts consider four factors: (1) interrelation of operations, (2) common management, (3) centralized control of labor relations, and (4) common ownership or financial control.  Kang v. U. Lim Am., Inc., 296 F.3d 810, 815 (9th Cir. 2002); Laird, 68 Cal. App.

---

California courts applying the test in FEHA and California wrongful termination cases, however, have not insisted on the parent-subsidiary relationship as a prerequisite for the test.  Nelson v. Fog City Diner, Inc., No. A095951, 2002 WL 31259512, at * 11 (Cal. App. 1st Dist. Oct. 9, 2002) (FEHA); Martinucci, 2011 WL 1020043, at *17 (wrongful termination).

4th at 737.  The third factor, centralized control of labor relations, is the most important.  <u>Kang</u>, 296 F.3d at 815; <u>Laird</u>, 68 Cal. App. 4th at 738.  The critical question is, "what entity made the final decisions regarding employment matters related to the person claiming discrimination?"  <u>Laird</u>, 68 Cal. App. 4th at 738 (quoting <u>Frank v. U.S. West, Inc.</u>, 3 F.3d 1357, 1363 (10th Cir. 1993)).

Plaintiff's only factual allegations regarding ties between her employer and Sutter Health or SGMF are found in the tenth paragraph of the Complaint.  There, she alleges that SGMF is responsible for running the "business side" of GMG and that there is some overlap between GMG and SGMF boards and committees.  The Complaint does not contain any allegations regarding a direct relationship between plaintiff's employer and Sutter Health, and gives no indication of common ownership or financial control between plaintiff's employer and the other two defendants.

At most, these allegations suggest some interrelation of operations or common management between SGMF and GMG.  Some overlap between the management of corporations, though, is not necessarily inappropriate.  <u>See</u> <u>United States v. Bestfoods</u>, 524 U.S. 51, 68 (1998).  The Complaint alleges no facts suggesting that individuals with roles at both GMG and SGMF did not respect defendants' separate corporate identities or that Sutter Health or SGMF are so intertwined in GMG's operations as to justify holding them liable alongside GMG as a single employer.  Most importantly, there are no facts suggesting that there was centralized control of employment matters or that Sutter Health or SGMF played any role in the employment actions at issue here.

11

If these allegations were enough to satisfy the integrated enterprise test, the presumption of separate corporate existence would mean very little. Plaintiff's statement that "Sutter Health was her joint employer under the 'integrated enterprise' theory," (Compl. ¶ 2), is a conclusory statement of law that is insufficient to defeat a motion to dismiss. See Iqbal, 556 U.S. at 1949. Her factual allegations regarding the connection between GMG and SGMF address only two of the four factors of the integrated enterprise test and do not plausibly suggest that she would be entitled to hold SGMF liable as her employer. See id. at 1950. Accordingly, plaintiff has failed to adequately plead claims one through seven against Sutter Health and SGMF.

### 2. Failure to Exhaust Administrative Remedies

Claims four through seven allege violations of FEHA. A plaintiff who seeks to bring a FEHA action must first exhaust her administrative remedies. Romano v. Rockwell Int'l Inc., 14 Cal. 4th 479, 492 (1996). In order to exhaust administrative remedies, a plaintiff must file a complaint with the Department of Fair Employment and Housing ("DFEH") within one year from the date on which the alleged unlawful conduct occurred. Cal. Gov't Code § 12960(b), (d). The DFEH will then issue a right-to-sue notice upon completion of its investigation of the complaint and not later than one year after the initial filing of the complaint. Id. § 12965(b). A plaintiff must ordinarily obtain a right-to-sue letter to bring a FEHA claim in court. Romano, 14 Cal. 4th at 492 (to exhaust administrative remedies, an employee must file a complaint with DFEH and receive a DFEH right-to-sue

12

notice.)

Failure to list a defendant in the administrative complaint precludes a civil action against that defendant. <u>Medix Ambulance Serv. v. Superior Court</u>, 97 Cal. App. 4th 109, 116-18 (4th Dist. 2002). Although "courts have contemplated exceptions to this rule grounded on equitable considerations, they have tied any such exception closely to the functions of the exhaustion requirement." <u>Rich v. Koi Restaurant</u>, No. B196078, 2009 WL 793913, at *6 (Cal. App. 2d Dist. Mar. 27, 2009).

Here, the complaint filed with the DFEH named only GMG and contained no reference to the other two defendants. (Req. for Judicial Notice Ex. A.) Plaintiff has not alleged that she was in some way prevented from listing Sutter Health and SGMF in her DFEH complaint or explained why exempting her from the exhaustion requirement in this case would not undermine the purposes of that requirement. Accordingly, the court will not excuse her from complying with the exhaustion requirement.

B.   <u>Motion for a More Definite Statement</u>

Sutter Health and SGMF also move for a more definite statement as to claims eight and nine. (<u>Id.</u>) Plaintiff's Opposition indicates that she does not oppose the motion for a more definite statement and requests leave to amend her complaint to add allegations specific to Sutter Health and SGMF on those claims. (Pl.'s Mem. of P. & A. in Opp'n at 6 (Docket No. 17).) Accordingly, the court will grant the motion for a more definite statement as to plaintiff's claims for defamation and intentional infliction of emotional distress.

IT IS THEREFORE ORDERED that Sutter Health and SGMF's

13

joint motion to dismiss claims one through seven be, and the same hereby is, GRANTED;

   IT IS FURTHER ORDERED that Sutter Health and SGMF's joint motion for a more definite statement as to claims eight and nine be, and the same hereby is, GRANTED; and

   IT IS FURTHER ORDERED that plaintiff's Request for Withdrawal of First Amended Complaint, (Docket No. 28) be, and the same his hereby, GRANTED.

   Plaintiff has twenty days from the date of this Order to file a new amended complaint, if she can do so consistent with this Order.

DATED:  February 27, 2012

*[signature: William B. Shubb]*
WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE