UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

BETH A. RHODES, M.D.,

        Plaintiff,

   v.

SUTTER HEALTH, a California corporation, SUTTER GOULD MEDICAL FOUNDATION, a California corporation, THE GOULD MEDICAL GROUP, INC., a California corporation,

        Defendants.
_____/

NO. CIV. 2:12-0013 WBS DAD

ORDER RE: MOTION TO DISMISS FIRST AMENDED COMPLAINT

----oo0oo----

        Plaintiff Beth A. Rhodes brought this action against Sutter Health, Sutter Gould Medical Foundation ("SGMF"), and The Gould Medical Group, Inc. ("GMG") alleging unlawful retaliation, constructive discharge, gender harassment, gender discrimination, failure to prevent discrimination, violation of California Business and Professions Code section 2056, defamation, and intentional infliction of emotional distress.  Currently before the court is the joint motion by Sutter Health and SGMF to dismiss all of plaintiff's causes of action as to Sutter Health and plaintiff's first through third causes of action as to SGMF

1

for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

I.   Factual and Procedural Background

Plaintiff alleges that she was employed by GMG as a radiologist specializing in breast and body imaging from January 2008 through May 2011. (First Am. Compl. ("FAC") ¶ 1.)

By the summer of 2008, she became concerned that a GMG protocol requiring pre-biopsy surgical consultations was medically unnecessary and delayed proper patient care. (FAC ¶ 11.)  She also believed that the protocol was "essentially self-referral to the GMG, SGMF and Sutter Health for monetary gain and amounted to Medicare fraud." (Id.)  She further claims that, consistent with her obligation to the public to advocate for appropriate health care, she reported her concerns regarding the protocol to GMG's senior partners. (Id.)

According to plaintiff, GMG's chief partner retaliated against her for expressing her misgivings about the protocol by assigning her low value work. (Id. ¶ 43.)  Because of this low value work, plaintiff alleges that she was forced to work longer hours, making it appear as though she had "developed time management issues." (Id.)  She further contends that this low value work was one of the reasons she was denied an annual performance bonus. (Id. ¶ 68.)

In addition to the protocol requiring pre-biopsy consultations, plaintiff claims that she raised other patient care issues with senior GMG staff. (Id. ¶¶ 44-45, 51, 53.)  She further alleges that, due to her advocacy for appropriate patient care, persons associated with GMG and SGMF engaged in a

2

retaliatory campaign, creating a hostile working environment. (Id. ¶¶ 52-78.)  Included in this campaign were threats, (id. ¶¶ 46, 57, 71), false accusations and unfair criticisms, (id. ¶¶ 55, 58, 62, 65), intentional interference with plaintiff's ability to care for patients, (id. ¶¶ 58-59), and assaultive behavior (id. ¶ 67).  Plaintiff also heard about rumors being spread that she was guilty of "bad behavior," that there was a "big file" compiled on her, and that she was "on thin ice" and "on the way out."  (Id. ¶¶ 60, 71, 77.)

In addition to the hostility directed at her personally, plaintiff also claims that GMG implemented a policy requiring shareholders and associates to live "in the vicinity" of the hospital in a gender discriminatory way, using it to fire two female radiologists but turning a blind eye to male members who lived in Dublin, San Ramon, Los Angeles, and Santa Fe, New Mexico.  (Id. ¶¶ 47-48.)  This, she alleges, was "typical of the preference given to male members of the GMG to the detriment of the female members of the GMG."  (Id. ¶ 48.)

Plaintiff alleges that she eventually contacted the independent ombudsman service at Sutter Health to complain about "harassment, gender discrimination, Medicare fraud, time care [sic] fraud and inappropriate patient advocacy" and contacted Sutter Health chief compliance officer Eunice King to report the harassment being directed at her.  (Id. ¶¶ 10, 69.)  She also claims that she sent an email to GMG "that set out in no uncertain terms that the 'Surgical Consult Prior to Breast Needle Biopsy' protocol fraud had to stop as it constituted insurance billing fraud and Medicare and Medi-Cal billing fraud."  (Id. ¶

3

72.)

Due to the stress of her working environment, plaintiff contends that in December 2010, she was medically excused from work. (Id. ¶ 76.) Initially, her leave was scheduled to last through February 4, 2011, but was extended through May 27, 2011. (Id.) At the end of her medical leave, plaintiff resigned from her position with GMG, which she alleges had become intolerable due to hostile working conditions that caused her both physical and emotional distress. (Id. ¶ 78.)

Plaintiff brings claims against three defendants: GMG, SGMF, and Sutter Health. She alleges that GMG was her employer, (id. ¶ 14), and that "Sutter Health, SGMF, and GMG were her joint employers under the 'integrated enterprise' theory," (id. ¶ 10). The FAC alleges various ways in which SGMF and GMG were interrelated in matters of labor relations, financial control, and management, (id. ¶¶ 6-9, 19-40), and alleges that Sutter Health and SGMF had interrelated operations and common management, (id. ¶¶ 16-18). The FAC does not detail any alleged direct connection between GMG and Sutter Health other than Sutter Health employee Eunice King's role in investigating plaintiff's complaints. (Id. ¶¶ 10, 69).

Plaintiff's FAC contains claims for (1) retaliation in violation of the federal False Claims Act, (2) retaliation in violation of the California False Claims Act, (3) violation of California Business and Professions Code section 2056, (4) gender harassment in violation of the California Fair Employment and Housing Act ("FEHA"), (5) sex discrimination in violation of FEHA, (6) retaliation for reporting patient abuse in violation of

4

FEHA, (7) retaliation in violation of FEHA, (8) failure to prevent discrimination in violation of FEHA, (9) constructive discharge in violation of public policy, (10) defamation, and (11) intentional infliction of emotional distress. (Docket No. 30.) The parties stipulated to dismiss claim six with prejudice as to all defendants. (Docket No. 37.)

Defendants Sutter Health and SGMF now move to dismiss claims one and two as to Sutter Health and SGMF on the ground that the integrated enterprise theory does not apply to these claims, claims four through nine as to Sutter Health on the ground that plaintiff failed to adequately plead an employment relationship or an alternate theory of liability, claim three as to Sutter Health and SGMF on the ground that there is no private cause of action for violation of Business and Professions Code section 2056, and claims ten and eleven as to Sutter Health on the ground that they do not state a claim. (Docket No. 40.)

II. Analysis

To survive a motion to dismiss, a plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). This "plausibility standard," however, "asks for more than a sheer possibility that a defendant has acted unlawfully," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), and "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557). In deciding whether a plaintiff has stated a claim, the court must accept the

allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984); Cruz v. Beto, 405 U.S. 319, 322 (1972).

### A. Failure to Adequately Allege an Employment Relationship

Plaintiff brings eight claims for which she must demonstrate either an employment relationship or an alternate basis for liability. Claims four through eight are all brought under the FEHA, "which predicates potential . . . liability on the status of the defendant as an 'employer.'" Kelly v. Methodist Hosp. of S. Cal., 22 Cal. 4th 1108, 1116 (2000) (quoting Cal. Gov't Code § 12926). Claims one, retaliation in violation of the federal False Claims Act ("FCA"), and two, retaliation in violation of the California False Claims Act ("CFCA"), may only be brought against an employer. United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1060 (9th Cir. 2011) (citing United States ex rel. Hopper v. Anton, 91 F.3d 1261, 1269 (9th Cir. 1996)) (listing employer's discriminatory act as third element of a FCA claim); LeVine v. Weis, 90 Cal. App. 4th 201, 212 (2d Dist. 2001) (finding that CFCA imposes liability only on employers). Finally, claim nine is a claim for wrongful termination in violation of public policy, and "only an employer can be liable for the tort of wrongful discharge." Khajavi v. Feather River Anesthesia Med. Grp., 84 Cal. App. 4th 32, 38 (3d Dist. 2000).

Plaintiff alleges that she was employed by GMG. By contrast, nowhere does she allege that either Sutter Health or

SGMF was also her employer. Instead, she argues that Sutter Health and SGMF should be held liable under the integrated enterprise test.[1]

### 1. Applicability of Integrated Employer Test to Claims Under the FCA and the CFCA

Under the integrated enterprise test, multiple businesses may be considered a single employer. Morgan v. Safeway Stores, Inc., 884 F.2d 1211, 1213 (9th Cir. 1989). Although the test was originally developed by the National Labor Relations Board in labor cases, California courts have applied the integrated enterprise test in FEHA and wrongful termination cases. See, e.g., Laird v. Capital Cities/ABC, Inc., 68 Cal. App. 4th 727, 737-38 (5th Dist. 1998) (applying test to claims arising under FEHA and claim for wrongful termination).[2]

As the court mentioned in its previous Order, it is not

---

[1] In its earlier Order granting Sutter Health and SGMF's motion to dismiss plaintiff's Complaint, the court assumed for the purposes of that Order that the integrated enterprise test applied to all of plaintiff's employment related claims. This was because defendants at that time did not challenge plaintiff's reliance on the integrated enterprise test to establish liability. Defendants now raise the issue as to several of plaintiff's claims.

[2] The integrated enterprise test, as adopted in California by the court in Laird, initially focused on whether a corporate parent could be held liable for the acts of its subsidiary. Miller v. Swiss Re Underwriters Agency, Inc., No. CV 09-09551, 2010 WL 935697, at *2-3 (C.D. Cal. Mar. 15, 2010). Nowhere does plaintiff allege the existence of a corporate parent-subsidiary relationship between the parties. Other California courts applying the test in FEHA and California wrongful termination cases, however, have not insisted on the parent-subsidiary relationship as a prerequisite for the test. Nelson v. Fog City Diner, Inc., No. A095951, 2002 WL 31259512, at * 11 (Cal. App. 1st Dist. Oct. 9, 2002) (FEHA); Martinucci v. S. Cal. Permanente Med. Grp., No. B215453, 2011 WL 1020043, at *17 (Cal. App. 2d Dist. Mar. 23, 2011) (wrongful termination), and neither party challenges the application of the test on this ground.

7

obvious that it would be appropriate for the court to utilize the integrated enterprise test in considering plaintiff's California and federal FCA claims. Only a few courts have considered the integrated enterprise test in the context of claims under the federal FCA, and none have squarely held the test applicable to claims like plaintiff's brought under 31 U.S.C. § 3730(h). Campion v. Ne. Utils., 598 F. Supp. 2d 638, 656 n.12 (M.D. Pa. 2009) (citing cases). Further, plaintiff has not cited, and the court is not aware, of any case applying the integrated enterprise test in a CFCA case.

Under the integrated enterprise test as adopted by the Ninth Circuit, "[a] plaintiff with an otherwise cognizable Title VII claim against an employer with less than 15 employees may assert that the employer is so interconnected with another employer that the two form an integrated enterprise, and that collectively this enterprise meets the 15-employee minimum standard [necessary to hold an employer liable under Title VII]." Anderson v. Pac. Mar. Ass'n, 336 F.3d 924, 929 (9th Cir. 2003). The Ninth Circuit has clarified that "[t]he test does not determine joint liability . . . , but instead determines whether a defendant can meet the statutory criteria of an 'employer' for Title VII applicability." Id. at 928. "[T]he history of how the integrated enterprise test has been applied in the Ninth Circuit confirms that the test is only employed to determine statutory coverage under Title VII if there is not already an otherwise qualified employer subject to the suit." E.E.O.C. v. NCL Am., Inc., Civil Nos. 06-00451 SOM/BMK, 07-00372 SOM/BMK, 2008 WL 281524, at *8 (D. Haw. Feb. 1, 2008).

8

The integrated employer test advances the anti-discrimination purpose behind Title VII by preventing employers from artificially dividing themselves into organizations with fewer than 15 employees in order to escape liability. E.E.O.C. v. Falls Vill. Ret. Cmty., Ltd., No. 5:05 CV 1973, 2007 WL 756803, at *8 (N.D. Ohio Mar. 7, 2007) ("Application of the integrated enterprise test to satisfy the fifteen employee requirement is likely more commonplace because of the principle that the term 'employer' should be liberally construed to effect the remedial purposes of the anti-discrimination laws. In those circumstances, application of the integrated enterprise test prevents employers from using legal fictions to avoid Title VII liability." (citation omitted)). In extending the integrated enterprise test to FEHA claims, the California Court of Appeal noted that "[b]ecause California's Fair Employment and Housing Act has the same nature and purpose as the federal law, California courts frequently look to federal case law for guidance in interpreting the FEHA." Laird, 68 Cal. App. 4th at 737.

Unlike Title VII, neither the FCA nor the CFCA limits liability to employers with more than a minimum number of employees. Instead, the FCA provides "[a]ny employee, contractor, or agent" with protection from retaliation, 31 U.S.C. § 3730(h),[3] and the CFCA provides that no "employer" shall

---

[3] While the recent amendment to extend protection to contractors and agents in addition to employees does indicate a Congressional desire to broaden protection under the FCA to include people such as physicians working as independent contractors, 155 Cong. Rec. E1295-03, plaintiff seeks to hold Sutter Health and SGMF liable as her employers. She does not allege that she was their contractor or agent. The amendment,

"demote, suspend, threaten, harass, deny promotion to, or in any other manner discriminate against, an employee" for furthering a false claims act.

Courts may look to case law under Title VII in interpreting the FCA because of the remedial purpose the statutes share. United States v. Aiello, 836 F. Supp. 720, 725-26, 726 n.9 (E.D. Cal. 1993) (adopting Title VII caselaw that a previous employer may be considered an employer in FCA qui tam case, but noting that "there is not a perfect fit between the statutes"). It does not follow, however, that it is reasonable to extend a part of Title VII caselaw like the integrated enterprise theory to FCA claims when the reason that the doctrine was developed in the Title VII context is absent from the FCA. The FCA does not impose a statutory minimum in its definition of an employer, and so it would appear that there is no reason to apply the integrated enterprise test to FCA claims. Cf. Herman v. United Bhd. of Carpenters & Joiners of Am., 60 F.3d 1375, 1383 (9th Cir. 1995) (applying the integrated enterprise test when an enterprise did not meet the minimum employee requirement under the Age Discrimination in Employment Act).

California courts have not insisted as strictly as the Ninth Circuit that the integrated enterprise test be limited to cases involving questions of statutory coverage. See Laird, 68 Cal. App. 4th at 737 (adopting integrated enterprise test in FEHA and wrongful termination case without discussion of statutory minimums); see also Bishop v. Wyndham Worldwide Corp., Nos.

---

therefore, is irrelevant to arguments about whether plaintiff should be considered an employee of Sutter Health or SGMF under the terms of the FCA.

10

A122517, A123449, 2011 WL 576571, at *33-34 (1st Cal. App. Dist. Feb. 18, 2011) (listing integrated enterprise test as "one of the other five state law tests alternatively employed in FEHA cases" without mention of statutory minimums) (unreported); Goldstein v. Hanson, No. G033321, 2005 WL 775421, at *3-4 (4th Cal. App. Dist. Apr. 5, 2005) (applying integrated enterprise test in action for wages and wrongful termination) (unreported). If the court were to hold that a defendant could be held liable for a CFCA claim on the basis of the integrated enterprise test, however, the court would be breaking new ground on a question of state law because no California court that the court is aware of has even considered extending the test to determine liability under the CFCA. California courts often look to case law under the FCA in interpreting the CFCA because of the statutes' shared objectives and similar language, City of Pomona v. Superior Court, 89 Cal. App. 4th 793, 802 (2d Dist. 2001). This does not provide a rationale for the court to extend the integrated enterprise test to plaintiff's CFCA claims because, as discussed above, the integrated enterprise test is ill-suited to FCA doctrine.

Plaintiff presents only one additional argument why the integrated enterprise test should apply to her CFCA claim––the CFCA's broad remedial purpose and language in the statute instructing that it should be "liberally construed." Cal. Gov't Code § 12655(c). Liberal construction and a broad remedial purpose, however, are not the same as unlimited liability. If such arguments were enough, any proposed test that expanded the class of possible defendants in a CFCA case could be adopted. These broad arguments are not enough to justify a decision by

11

this court to apply a specialized definition of an employer developed in the context of federal labor law to the CFCA.

Plaintiff has not explained why the integrated enterprise test should apply to her FCA and CFCA claims other than that it would be help her to state a claim against entities in addition to GMG, her employer. The court, therefore, will not take such a step in this case. Accordingly, the court will dismiss claims one and two as to Sutter Health and SGMF.

        2.   <u>Failure to Adequately Allege that Sutter Health Was Plaintiff's Integrated Employer</u>

Assuming that it would be appropriate to apply the integrated enterprise test as to GMG and Sutter Health, plaintiff's FAC fails to allege facts suggesting that GMG and Sutter Health should be treated as a single employer under that test for the purposes of claims four through nine, plaintiff's remaining employment-related claims.

When applying the integrated enterprise test, California and federal courts consider four factors: (1) interrelation of operations, (2) common management, (3) centralized control of labor relations, and (4) common ownership or financial control. <u>Kang v. U. Lim Am., Inc.</u>, 296 F.3d 810, 815 (9th Cir. 2002); <u>Laird</u>, 68 Cal. App. 4th at 737. There is a presumption that separate corporate entities have distinct identities, and plaintiffs bear a heavy burden under both California and federal law when they seek to rebut this presumption and hold multiple corporate entities liable as a single employer. <u>Laird</u>, 68 Cal. App. 4th at 737. The third factor of the test, centralized control of labor relations, is

12

the most important. <u>Kang</u>, 296 F.3d at 815; <u>Laird</u>, 68 Cal. App. 4th at 738.  The critical question is, "what entity made the final decisions regarding employment matters related to the person claiming discrimination?" <u>Laird</u>, 68 Cal. App. 4th at 738 (quoting <u>Frank v. U.S. West, Inc.</u>, 3 F.3d 1357, 1363 (10th Cir. 1993)).

      The only factual allegations plaintiff makes regarding a direct relationship between herself and Sutter Health are found in the tenth and sixty-ninth paragraphs of the FAC, where she alleges that a Sutter Health employee was involved in the investigation of her complaint. At most, this fact hints at factors one, interrelation of operations, and three, centralized labor relations.  However, being involved in an investigation is very different from exercising control over employment decisions, the key factor under the test.  Nowhere does plaintiff allege that a Sutter Health employee was responsible for the final decisions regarding the conditions of her employment. Additionally, the FAC gives no indication of common ownership or financial control between plaintiff's employer and Sutter Health. Such allegations are insufficient to show that Sutter Health and GMG should be considered an integrated enterprise and treated as one business.

      Plaintiff additionally urges the court to find that because SGMF and Sutter Health operate as an integrated enterprise and SGMF and GMG operate as an integrated enterprise, then GMG and Sutter Health are also an integrated enterprise. First, plaintiff only alleges facts going to two of four elements of the integrated enterprise test as to Sutter Health and SGMF

13

and alleges no facts that would suggest that Sutter Health plays any role in SGMF's employment decisions. The FAC therefore does not allege facts sufficient to suggest that Sutter Health and SGMF should be considered to be one employer under the integrated enterprise theory.

Second, the integrated enterprise theory is based on the nature of the relationship between two organizations, not on a finding that two organizations should be treated as one. One employer may have relationships with several other entities, each of which "control[s] the day-to-day employment decisions" of the employer, Laird, 68 Cal. 4th at 738, without those separate entities having any relationship at all with each other. Plaintiff cannot simply argue that because of a connection between GMG and SGMF and a separate connection between Sutter Health and SGMF, GMG and Sutter Health are connected. See Frank, 3 F.3d at 1362 (court could not infer interrelation between parent and subsidiary from interrelation between subsidiaries). The integrated enterprise test focuses on the direct relationship between a plaintiff's employer and a separate entity. The key question in the integrated enterprise inquiry is who is responsible for the employment decisions at issue, and plaintiff has alleged no facts to suggest that Sutter Health played any role in the decisions her complaint is based upon.

Plaintiff's statement that "Sutter Health . . . [was] her joint employer[] under the 'integrated enterprise' theory," (FAC ¶ 10), is a conclusory statement of law that is insufficient to defeat a motion to dismiss. See Iqbal, 556 U.S. at 1949. Without any allegations that Sutter Health had a direct

14

relationship with GMG suggesting that any of the four factors of the integrated enterprise theory were present, plaintiff cannot suggest that Sutter Health is plausibly liable under the integrated enterprise theory. Accordingly, claims four through nine must be dismissed against Sutter Health.

   B.   <u>Private Right of Action Under California Business and Professions Code Section 2056</u>

California Business and Professions Code section 2056 provides that:

> The application and rendering by any person of a decision to terminate an employment or other contractual relationship with, or otherwise penalize, a physician and surgeon principally for advocating for medically appropriate health care consistent with that degree of learning and skill ordinarily possessed by reputable physicians practicing according to the applicable legal standard of care violates the public policy of this state. No person shall terminate, retaliate against, or otherwise penalize a physician and surgeon for that advocacy, nor shall any person prohibit, restrict, or in any way discourage a physician and surgeon from communicating to a patient information in furtherance of medically appropriate health care.

Cal. Bus. & Prof. Code § 2056. The statute was originally enacted in 1993 in order to provide the statutory basis necessary for a tort action for wrongful termination in violation of public policy. See Khajavi, 84 Cal. App. 4th at 50-52; see also Siegel v. CHW W. Bay, Nos. A095042, A096115, 2002 WL 31599012 (1st Cal. App. Dist. Nov. 20, 2002) (examining the statute's legislative history to find that "the intended purpose of the legislation was to facilitate private, wrongful termination suits by physicians whose contracts were terminated for advocating improved patient care"). The second sentence quoted above was added to the statute by a 1996 amendment. 1996 Cal. Legis. Serv. 260 (West).

15

On the basis of this amendment, plaintiff urges us to find a stand-alone private right of action.

"A violation of a state statute does not necessarily give rise to a private cause of action." Lu v. Hawaiian Gardens Casino, Inc., 50 Cal. 4th 592, 596 (2010) (citation omitted). Instead, whether a party has the right to sue under a specific statute depends on whether the legislature, in enacting the statute, has "manifested an intent to create such a private cause of action" under the statute in question. Moradi-Shalal v. Fireman's Fund Ins. Cos., 46 Cal. 3d 287, 305 (1988). In order to find such a legislative intent, courts must first look to the language of the statute and then to its legislative history. Lu, 50 Cal. 4th at 596.

In examining the language of a statute, the court must look for signals such as "an express statement that a person has or is liable for a cause of action for a particular violation," "a remedy or means of enforcing its substantive provisions," or other "clear, understandable, unmistakable terms, which strongly and directly indicate that the Legislature intended to create a private cause of action." Id. at 597 (internal quotation marks and citations omitted). Section 2056 does clearly state that "[n]o person" shall penalize a physician for advocating on behalf of appropriate patient care. It does not, however, contain either any language establishing that physicians who are penalized in such a manner have a cause of action against those acting against them or warning that persons who violate the statute are liable for a cause of action based on the statute itself. Nor does it contain any language explaining what

-

-

remedies would be available to a plaintiff bringing suit for violation of section 2056.  See id. (listing examples of statutory language courts have found expressly creating causes of action, none of which are present in the section at issue here).

In the absence of language indicating an intent to create a private right of action, courts look to statutory history.  Section 2056 was originally enacted in response to a California Supreme Court decision that had warned that "courts in wrongful discharge actions may not declare public policy without a basis in either constitutional or statutory provisions." Khajavi, 84 Cal. App. 4th at 50 (quoting Gantt v. Sentry Ins., 1 Cal. 4th 1083, 1095 (1992)).  The purpose of the statute, therefore, was to protect physicians from retaliation for advocating for appropriate patient care by providing the statutory basis necessary to bring tort suits for wrongful termination in violation of public policy.  Id.

The 1996 amendment to include language providing, in part, that "No person shall terminate, retaliate against, or otherwise penalize a physician and surgeon for that advocacy," clarifies the legislature's desire to protect and encourage physicians' advocacy on behalf of their patients. Id. at 52 n.11.  Other than the language itself, plaintiff has pointed to nothing in the history of the statute to suggest that by adding one sentence to the statute, the legislature intended to create a new cause of action independent from a tort action for wrongful termination.  Accordingly, the court will dismiss plaintiff's cause of action for violation of California Business and

17

1  Professions Code section 2056 as to all defendants.[4]

2      C.    <u>Failure to Adequately Plead Claims for Defamation and
3             Intentional Infliction of Emotional Distress as to
4             Sutter Health</u>

5          Under California law, "[t]he elements of a defamation
6  claim are (1) a publication that is (2) false, (3) defamatory,
7  (4) unprivileged, and (5) has a natural tendency to injure or
8  causes special damage." <u>Wong v. Tai Jing</u>, 189 Cal. App. 4th
9  1354, 1369 (6th Dist. 2010) (citing <u>Taus v. Loftus</u>, 40 Cal. 4th
10 683, 720 (2007)).  To state a claim for intentional infliction of
11 emotional distress, a plaintiff must allege "(1) extreme and
12 outrageous conduct by the defendant with the intention of
13 causing, or reckless disregard of the probability of causing,
14 emotional distress; (2) the plaintiff's suffering severe or
15 extreme emotional distress; and (3) actual and proximate
16 causation of the emotional distress by the defendant's outrageous
17 conduct . . . ." <u>Christensen v. Superior Court</u>, 54 Cal. 3d 868,
18 903 (1991).

19         All of the individuals that plaintiff alleges made
20 defamatory statements or engaged in extreme and outrageous
21 conduct are either GMG or SGMF employees.  None are Sutter Health
22 employees.  Plaintiff argues that Sutter Health can be held
23 liable for the actions of employees of GMG and SGMF, apparently
24 through a combination of the doctrine of respondeat superior and

---

[4] Even if the court were to interpret section 2056 as providing a private cause of action, the claim as against Sutter Health would be dismissed because the FAC does not include any facts suggesting that anyone at Sutter Health terminated, retaliated against, or otherwise penalized plaintiff for her advocacy.

18

the integrated enterprise theory.

There are two problems with plaintiff's reasoning. First, as the court found above, plaintiff failed to allege facts sufficient to suggest that Sutter Health may be held liable as plaintiff's integrated employer. Plaintiff thus cannot hold Sutter Health liable under such a theory here. Second, plaintiff provides absolutely no support whatsoever for the novel argument that it would be appropriate for the court to apply the integrated enterprise theory, a theory developed in an employment-specific context, to common law tort claims. Accordingly, the court will dismiss claims ten and eleven as to Sutter Health.

IT IS THEREFORE ORDERED that Sutter Health and SGMF's joint motion to dismiss claims four through eleven as to Sutter Health be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that Sutter Health and SGMF's joint motion to dismiss claims one through three as to Sutter Health and SGMF be, and the same hereby is, GRANTED.

Plaintiff has twenty days from the date of this Order to file an amended complaint, if she can do so consistent with this Order.

DATED: May 21, 2012

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE