LAW OFFICES OF STEPHEN M. MURPHY
STEPHEN M. MURPHY (No. 103768)
P. BOBBY SHUKLA (No. 229736)
353 Sacramento Street, Suite 1140
San Francisco, CA 94111
Tel:    (415) 986-1338
Fax:   (415) 986-1231

Attorneys for Plaintiff
BETH A. RHODES, M.D.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA – SACRAMENTO DIVISION

| | |
|---|---|
| BETH A. RHODES, M.D.,<br><br>    Plaintiff,<br><br>v.<br><br>SUTTER HEALTH, a California Corporation, SUTTER GOULD MEDICAL FOUNDATION, a California Corporation, THE GOULD MEDICAL GROUP, INC., a California Corporation,<br><br>    Defendants. | Case No. 2:12-cv-00013-WBS-DAD<br><br>**PLAINTIFF BETH A. RHODES, M.D.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT BY DEFENDANT SUTTER GOULD MEDICAL FOUNDATION**<br><br>Judge: Hon. William B. Shubb<br>Location: Courtroom 5, 14th Floor<br>MSJ: January 28, 2013<br><br>Complaint Filed: January 3, 2012<br>FAC Filed: March 16, 2012<br>Trial Date: November 5, 2013 |

**TABLE OF CONTENTS**

**I.** INTRODUCTION……………………………………………………………………….5

II. STATEMENT OF FACTS………………………………………………………….…6

    A. Procedural History......................................................................................6

    B. Evidence in Opposition that shows joint employment status of plaintiff ..........6

    C. Evidence in Opposition that shows defendants employees Kathy Davis and Carolyn Plante engaged in conduct that exceeds the bounds tolerated in a civilized community …………………………………………………….7

III. ARGUMENT………………………………………………………………………….9

    A. Defendant's motion for summary judgment should be denied as to the fourth through ninth cause of action as to whether or not plaintiff was an employee of SGMF for FEHA/Constructive Discharge purposes and Plaintiff has raised a genuise issue as to SGMF employee's intentional infliction of emotional distress……………………….……9

    B. Plaintiff has raised a genuine issue of fact as to whether or not plaintiff had a joint employer relationship pursuant to the "integrated enterprise theory" and in the alternative requests the court adopt the "integral enterprise theory" based upon the evidence offered in support of the motion to prevent injustice………………………………….……10

        a. Defendant Sutter Gould Medical Foundation has waived whatever protection they claim they are entitled to as a separate foundation based upon the fact that they have made medical decisions proximately related to plaintiff's claims herein…………………….12

    C. Plaintiff has raised a genuine issue of material fact with regard to her intentional infliction of emotional distress claim………………………………….13

        a. Defendant Sutter Gould Medical Foundation is liable for the acts of its employees under the theory of respondeat superior......................15

    **D**. Plaintiff has raised a triable issue of fact as to the imposition of punitive damages based upon the fact that Roberta Edge was the Director of the Department of Imaging who reported directly to the Chief Operating Officer and on the basis of ratification of defendant's conduct…………………………………………….16

# TABLE OF AUTHORITIES

*In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions,*

538 F.2d 180, 184-185 (8th Cir. 1976) …………………………………………………..6

*Abdul-Jabar v. General Motors Corp.*, 85 F.3d 407, 413 (9th Cir. 1996)…………………..6

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598………………………..6

*Egelston v. State University College of Geneso*, 535 F.2d 752, 754-55 (2nd Cir. 1976)..7

*Sarnoff v. Ciglia*, 165 F.2d 167, 168-69 (3d Cir. 1947)……………………………………..7

*Martinucci v. S. Cal. Permanente Med. Grp.,* 2011 Cal.App. Unpub. LEXIS 2134……..7

*Hughes v. Pair* (2009) 46 Cal.4th 1035, 1050–1051 [95 Cal.Rptr.3d 636,

209 P.3d 963])……………………………………………………………………………….10

*Yurick v. Superior Court* (1989) 209 Cal.App.3d 1116, 1128 [257 Cal.Rptr. 665]………11

*Fletcher v. Western Life Insurance Co.* (1970) 10 Cal.App.3d 376, 397 [89 Cal.Rptr]…11

*Aweeka v. Bonds* (1971) 20 Cal.App.3d 278, 281–282 [97 Cal.Rptr. 650]………………11

*Bundren v. Superior Court* (1983) 145 Cal.App.3d 784, 791–792 [193 Cal.Rptr. 671]...11

*McDaniel v. Gile* (1991) 230 Cal.App.3d 363, 373 [281 Cal.Rptr. 242……………………12

*Grimes v. Carter* (1966) 241 Cal.App.2d 694, 699 [50 Cal.Rptr. 808]……………….....12

*Perez v. Van Groningen & Sons, Inc.* (1986) 41 Cal.3d 962, 967 [227 Cal.Rptr. 106,

719 P.2676]……………………………………………………………………….………….12

*White v. Ultramar, Inc.* (1999) 21 Cal.4th 563, 571-572, 88 Cal.Rptr.2d 19………… . 12

*Accardi v. Superior Court, 17 Cal.App.4th 341*……………………………………………..12

*Sandoval v. Southern Calif. Enterprises* (1950) 98 Cal.App.2d 240, 250,
219 P.2d 928 ……………………………………………………………………………..12

*Coates v. Construction & General Laborers Local N. 185* (1971) 15 Cal.App.3d
908, 915, 93 Cal.Rptr. 639……………………………………………………………13

*Kiseskey v. Carpenters' Trust, supra,* 144 Cal.App.3d 222, 235 …………………………13

**PLAINTIFF BETH A. RHODES, M.D.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT BY DEFENDANT SUTTER GOULD MEDICAL FOUNDATION 3**

TREATISES

6 Witkin, Summary Cal. Law 10th *Torts* § 1582………………………………………….12

## I. INTRODUCTION

The evidence shows that plaintiff was an employee of both defendant Sutter Gould Medical Foundation (SGMF) and the Gould Medical Group (GMG) based upon defendants' own documentation. The interrelationship between SGMF and GMG is unique to the practice of medicine because of the statutory relationship provided to groups of physicians and their support staff to operate as foundations which should not exempt them from the broad remedial function of the Fair Employment and Housing Act (FEHA) provisions against discrimination. Plaintiff requests this court fashion the "integral enterprise test" to achieve the objective of the FEHA legislation for this sector of the work force.

Plaintiff also contends that she has raised a genuine issue of fact with regard to whether or not SGMF violated the Health and Safety Code Section 1206(1) exemption they base their argument on (i.e., need a foundation because they cannot practice medicine). The protocol at issue that plaintiff was forced to follow, and which resulted in her constructive discharge, on its face states: "It is the policy of the **Sutter Gould Medical Foundation (SGMF)** to schedule patients for a surgical consult prior to any needle biopsy of the breast." (Emphasis added.) Plaintiff also contends that SGMF violated the basis for the exemption by shredding the personal medical records of patients, called "pink sheets", to keep the number and identifying information of how many women have been defrauded by SGMF/GMG from seeing the light of day in this litigation.

Finally, and in any event, plaintiff has specifically pled and can prove a separate non-derivative count for intentional infliction of emotional distress arising out of SGMF

employee Kathy Davis intentionally causing a painful hematoma to form on one of plaintiff's patients. The evidence shows that Ms. Davis did so in order to incite plaintiff would have an "inappropriate outburst" resulting in her termination. In another situation, SGMF employee Carolyn Plante intentionally did a Crown Rump Length exam of a fetus as a width instead of as a length and then taunted plaintiff. Moreover, the evidence shows that SGMF employees "eavesdropped" on confidential communications between plaintiff and her patients.

Hence, plaintiff contends that the motion for summary judgment should be denied (except as to the defamation count which plaintiff does not contest as to SGMF only).

**II. STATEMENT OF FACTS**

A. Procedural History

This matter twice has been before this court on motions to dismiss by Sutter Health and SGMF. [ECF No. 29 and ECF No. 51]

B. Evidence in Opposition that shows joint employment status of plaintiff

Plaintiff obtained in discovery several documents that show that SGMF represented that plaintiff was an employee of SGMF to Medicare (Declaration of Stephen J. Purtill, hereinafter "Dec SJP" at Exhibit BB); to the Department of Health Care Services (Dec SJP at Exhibit Z); to Memorial Hospital (Dec SJP at Exhibit CC); that GMG Medical Director Steven Mitnick, M.D. held himself out as an agent of SGMF (Dec SJP at SEALED 060-062); that the Physician Recruitment Director who recruited plaintiff held herself as an employee of "Sutter Gould Medical Foundation/GMG (Dec SJP at Exhibit EE); and plaintiff's treating orthopedist identified her as "a radiologist here at the Sutter Gould Medical Foundation/Gould Medical Group" (Dec SJP at Exhibit II).

SGMF letterhead was used by GMG doctors in communications with plaintiff (Dec

SJP at Exhibit S); SGMF Imaging Director evaluated plaintiff's performance at her annual reviews (Dec SJP at Exhibit M and O); and plaintiff was required to follow or subject to several joint operating policies (Dec SJP at Exhibit J, K, and Y). Plaintiff's complaints of gender harassment and discrimination were conducted as a "joint investigation" for SGMF and GMG (Exhibit F); SGMF employee Roberta Edge was used by GMG Medical Director Dr. Mitnick as part of his "leadership team" that conducted a sham investigation into Dr. Rhodes claims, including using her as the person to draft Dr. Rhodes "Final Warning" letter (Exhibit C).

C. Evidence in Opposition that shows defendants' employees Kathy Davis and Carolyn Plante engaged in conduct that exceeds the bounds tolerated in a civilized community

Plaintiff attempted in the spring of 2010 to bring to the attention of her mentor and the department chief errors of knowledge that she observed in the reads of a fellow radiologist Melinda Knox, M.D. She also reported to them inappropriate conduct between Dr. Knox and Peter Triolo, M.D., a senior member of the group. Thereafter, on April 30, 2010 a meeting was held in the office of the department chief, Dr. Paul Stadelman, with SGMF Director of Imaging Robbie Edge, Melinda Knox, M.D. and Dr. Rhodes allegedly for the purpose of "clearing the air" between Dr. Rhodes and Dr. Knox. The meeting began with Dr. Knox raising her voice at Dr. Rhodes which Dr. Rhodes responded to in the same measure. Then there was discussion where Dr. Rhodes truthfully answered the questions put to her by Dr. Stadelman. Thereafter Robbie Edge wrote an account of the meeting that did not mention any ranting or screaming on the part of Dr. Rhodes. (Dec SJP at Exhibit Q) In the first week of June, Dr. Rhodes and her husband were threatened by Dr. Paul Wistow that she was going to receive a letter she would not like and if she wanted to keep her job to just remain quiet. She was told

**PLAINTIFF BETH A. RHODES, M.D.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT BY DEFENDANT SUTTER GOULD MEDICAL FOUNDATION 7**

effectively the same thing by Dr. Pricco. On June 10, 2010 Dr. Rhodes received a letter written by Dr. Mitnick but signed by Dr. Stadelman on SGMF stationary warning her that her conduct at the April 30, 2010 meeting was unprofessional and that any further "unprofessional behavior" would "be grounds for your immediate termination." (Dec SJP at, e.g., Exhibit F, M VanDermyden deposition) At all times thereafter Dr. Rhodes was on "pins and needles" as she had been warned about her allegedly "inappropriate behavior' which was false but set up the following outrageous conduct by SGMF employees.

SGMF employee Kathy Davis intentionally failed to hold pressure at Sara Grantski's biopsy site causing her to sustain a painful hematoma so that it would be elicit a "inappropriate outburst" on the part of Dr. Rhodes. See Declaration of Beth A. Rhodes in opposition hereto. Dr. Rhodes had a standing order for Kathy Davis to hold pressure at her patient's biopsy sites for 15 minutes for hemostasis to occur along the biopsy needle track. Kathy Davis knew this and in the first version of a sham "harassment complaint" she filed in December of 2010 she acknowledged the 15 minute requirement but in a later version changed the amount of time she usually held pressure to 5 minutes. (Exhibit B Rhodes deposition; Exhibit D Davis deposition and SEALED 053-055 and SEALED 056-059, Exhibits 78 and 78A to Davis deposition)

Sara Grantski's daughter, Carol Zwald (now Frazier), was present the whole time and personally observed Kathy Davis hold pressure "for no more than a minute or two minutes at most" which caused her 85 year old mother a large and painful hematoma. (Carol Frazier Declaration filed in Support of Opposition hereto.) This minimal period of time was documented by Dr. Rhodes at Mrs. Granski's follow-up visit on November 9, 2010 when both Sara Grantski and Carol Zwald (Frazier) signed a note confirming the outrageous conduct. (See Exhibit A to Carol Frazier declaration.) Thereafter Dr. Rhodes

wrote an email to SGMF employee Edge and Dr. Stadelman refusing to work with Kathy Davis anymore. (Dec SJP at Exhibit FF.)

SGMF employee Carolyn Plante intentionally performed a Crown Rump Length measurement on a mother's fetus as a width instead of a length. When the incomprehensible error was pointed out to Ms. Plante she responded to Dr. Rhodes in a taunting manner and said: "That's the way we measure it here. Why don't you ask a radiologist?" Dr. Rhodes immediately reported the conduct via email to Edge. (Dec SJP at Exhibit T; and SEALED 014-021; Rhodes declaration; Exhibit E Plante depositon). SGMF managers then tried to make it look like Dr. Rhodes had done something wrong in an effort to cover up Ms. Plante's intentional error done for the sole reason of trying to elicit an "inappropriate response" from plaintiff that would be immediate cause for termination.

In addition a SGMF employee was admonished for "eavesdropping" on plaintiff and one of her patients. (SEALED 027-030).

**III. ARGUMENT**

A. <u>Defendant's motion for summary judgment should be denied as to the fourth through ninth causes of action as to whether or not plaintiff was an employee of SGMF for FEHA/Constructive Discharge purposes and Plaintiff has raised a genuine issue as to SGMF employee's intentional infliction of emotional distress</u>

Under federal procedural law, the moving party in a motion for summary judgment has the burden of making a sufficient showing that the claim is entirely without merit. If they fail to do so, the motion must be denied. *In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions,* 538 F.2d 180, 184-185 (8th Cir. 1976) (the summary judgment movant bears the burden of showing the absence of material issues of fact and all reasonable factual inferences must be made in favor of the non-moving party);

**PLAINTIFF BETH A. RHODES, M.D.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT BY DEFENDANT SUTTER GOULD MEDICAL FOUNDATION 9**

*Abdul-Jabar v. General Motors Corp.*, 85 F.3d 407, 413 (9th Cir. 1996) (trial court improperly entered summary judgment when there were remaining factual issues). Furthermore, the evidence must be construed in the light most favorable to plaintiff as the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598 (19700 (the evidence put forth for the summary judgment motion must be viewed in the light most favorable to the non-moving party). Summary judgment is a drastic remedy and should be sparingly granted. *Egelston v. State University College of Geneso*, 535 F.2d 752, 754-55 (2nd Cir. 1976) (summary judgment is a drastic remedy and should be used infrequently). Summary judgment is not proper if there are triable issues of fact remaining. *Sarnoff v. Ciglia*, 165 F.2d 167, 168-69 (3d Cir. 1947) (trial court should not have granted summary judgment when the affidavits showed there were disputed issues of material fact).

B. <u>Plaintiff has raised a triable issue of fact as to whether or not plaintiff had a joint employer relationship pursuant to the "integrated enterprise theory" and in the alternative requests the court adopt the "integral enterprise theory" based upon the evidence offered in support of the motion to prevent injustice.</u>

In *Martinucci v. S. Cal. Permanente Med. Grp.,* 2011 Cal.App. Unpub. LEXIS 2134 the court stated that pursuant to the integrated enterprise doctrine, two ostensibly separate business entities may be treated as a single employer if certain factors are present. (*Laird, supra, 68 Cal.App.4th at p. 737*.) These factors include the "interrelation of operations, common management, centralized control of labor relations, and common ownership or financial control." (*Ibid.*) A plaintiff need not establish all four of these factors before the integrated enterprise doctrine applies; "the heart of the inquiry is whether there is an absence of an arm's-length relationship among the companies." (*Knowlton v. TeltrustPhones, Inc. (10th Cir. 1999) 189 F.3d 1177, 1184.*) When the

evidence indicates "'an interrelationship [*49] between the immediate corporate employer and the affiliated corporation [sufficient] to justify the belief on the part of an aggrieved employee that the affiliated corporation is jointly responsible for the acts of the immediate employer,'" a jury is justified in finding that the two entities are the employee's single employer. *Lockard v. Pizza Hut, Inc. (10th Cir. 1998) 162 F.3d 1062, 1070)*

Herein plaintiff has raised genuine issues of fact based upon the interrelationship between SFMG and GMG as set forth in the Separate Statement of Genuine Issues and Disputed Facts and supporting evidence.

In the alternative, given the evidence of how the "group" and "foundation" model is structured, plaintiff requests the court adopt a new standard for joint employers based upon the factual reality of how these health care providers jointly operate set forth in the moving parties papers. Webster's New College Dictionary, 1995, Houghton Mifflin Company definition of integral is as follows: "Integral: 1. Essential for completeness. 2. Having everything required: entire." Herein plaintiff contends that you cannot have doctors without nurses and staff and nurses and staff require doctors. Because of the structure of health care delivery the Legislative History makes clear that clinics practicing under a Health & Safety Code Section 1206(1) exemption "should be treated like physicians' offices" (PE 7) and "function like group practices of physicians." (PE 14) See Sutter Gould Medical Foundation (hereinafter "SGMF") Request for Judicial Notice and Exhibit FF to McClain Dec. SGMF cites no evidence or authority that the dual structure to exempt them from state licensing requirements was also meant to be a back door mechanism to exempt the "physicians offices" from their Fair Employment and Housing Act obligations for violations of discrimination laws occurring at these clinics by their "joint" employees. Denying the FEHA rights of health care providers on either side of the

**PLAINTIFF BETH A. RHODES, M.D.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT BY DEFENDANT SUTTER GOULD MEDICAL FOUNDATION 11**

fictitious "group" and "foundation" divide was not the intention of the legislature. The "group" and "foundation" structure constitutes an "integral" enterprise and this court should hold that liability flows therefrom on this fact setting.

Plaintiff contends that "numerosity" is not a sufficient ground to deny FEHA protection to health care workers on this fact setting.

<u>a. Defendant Sutter Gould Medical Foundation has waived whatever protection they claim they are entitled to as a separate foundation based upon the fact that they have made medical decisions proximately related to plaintiff's claims herein.</u>

The Pre-Biopsy Surgical Consult Protocol (also known as the Surgical Consult Prior to Breast Needle Biopsy) states: I. Policy "It is the policy of the **Sutter Gould Medical Foundation ("SGMF")** to schedule patients for a surgical consult prior to any needle biopsy of the breast." (Emphasis added.) (Dec SJP at Exhibit C, Exhibit N, Exhibit I, Exhibit B, and Declaration of Jill Gordon in Support of SGMF Motion for Summary Judgment at ECF Docket #73 pages 17/18 of 26.) Plaintiff contends that this is clearly a "medical policy" requiring a "medical decision" and since, on the face of the protocol, SGMF imposes its medical decision on patients it voids the protection defendants argue California Health and Safety Code section 1206(l) provides them resulting, plaintiff contends, to a reversion to their earlier status as a "group practice of physicians" along with their nurses, technicians and staff.

SGMF admits that they have shredded key medical records of all of the SGMF patients who have undergone breast needle biopsy during the period that plaintiff was employed at Sutter Gould Medical Foundation/Gould Medical Group. This was in violation of both the PSA and the Sutter Gould Medical Foundation and Gould Medical Group Joint Operating Policy re Policy Guidelines on the Retention of Medical Records.

In effect, SGMF thereby made a "medical decision" and engaged in the practice of medicine that directly affected plaintiff and her ability to show from the actual medical records, the Breast Health Flow Sheet Mammography & Ultrasound Instructions, called "pink sheets", how many unnecessary pre-biospsy surgical consults have occurred. The pink sheets also identified patients which information would enable plaintiff to retrieve billing information to show the profit to SGMF/GMG in the past five years. Further, the GMG Medical Director acknowledges that it is up to SGMF to decide which medical records of a patient should be kept and which should be destroyed, thereby putting critical medical decisions in the hands of SGMF. This voids whatever protection defendant argues California Health and Safety Code section 1206(l) provides them resulting, plaintiff contends, in a reversion to their earlier status as a "group practice of physicians" along with their nurses, technicians and staff. (Exhibit D, SEALED 035-038, Exhibits H, G, I, X, DD and Declaration of Jill Gordon in Support of SGMF Motion for Summary Judgment at ECF Docket #73 pages 17/18 of 26.)

C. Plaintiff has raised a genuine issue of fact with regard to her intentional infliction of emotional distress claim

"A cause of action for intentional infliction of emotional distress exists when there is '(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct.' A defendant's conduct is 'outrageous' when it is so 'extreme as to exceed all bounds of that usually tolerated in a civilized community.' And the defendant's conduct must be 'intended to inflict injury or engaged in with the realization that injury will result.' " (*Hughes v. Pair* (2009)

**PLAINTIFF BETH A. RHODES, M.D.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT BY DEFENDANT SUTTER GOULD MEDICAL FOUNDATION 13**

46 Cal.4th 1035, 1050–1051 [95 Cal.Rptr.3d 636, 209 P.3d 963])

Herein, based upon the Declaration and deposition testimony of Beth A. Rhodes, M.D., the Declaration of Carol Frazier and Exhibit A thereto, and the deposition testimony of Kathy Davis and the exhibits to her testimony, and the other cited testimony in the Separate Statement in opposition it is without question that Kathy Davis's conduct in intentionally injuring Sara Grantski to get at Dr. Rhodes exceeds all bounds of that usually tolerated in a civilized community. Similarly the declaration and deposition testimony of Beth Rhodes, M.D. concerning the Crown Rump Length incident and the deposition testimony of Carolyn Plante and other evidence set forth in the Separate Statement in opposition clearly demonstrate conduct that is not tolerated by a civilized society.

"'[I]t is generally held that there can be no recovery for mere profanity, obscenity, or abuse, without circumstances of aggravation, or for insults, indignities or threats which are considered to amount to nothing more than mere annoyances.' " (*Yurick v. Superior Court* (1989) 209 Cal.App.3d 1116, 1128 [257 Cal.Rptr. 665], internal citations omitted.)

"Severe emotional distress [is] emotional distress of such substantial quantity or enduring quality that no reasonable man in a civilized society should be expected to endure it." (*Fletcher v. Western Life Insurance Co.* (1970) 10 Cal.App.3d 376, 397 [89 Cal.Rptr. 78].)

"'It is for the court to determine whether on the evidence severe emotional distress can be found; it is for the jury to determine whether, on the evidence, it has in fact existed.' " (*Fletcher, supra,* 10 Cal.App.3d at p. 397, internal citation omitted.)

" Relationships that have been recognized as significantly contributing to the conclusion that particular conduct was outrageous include: employer-employee (*Alcorn*

**PLAINTIFF BETH A. RHODES, M.D.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT BY DEFENDANT SUTTER GOULD MEDICAL FOUNDATION 14**

*v. Anbro Engineering, Inc.* (1970) 2 Cal.3d 493, 498, fn.2 [86 Cal.Rptr.88, 468 P.2d 216]), insurer-insured (*Fletcher v. Western National Life Insurance Co.* (1970) 10 Cal.App.3d 376, 403–404 [89 Cal.Rptr. 78]), landlord-tenant (*Aweeka v. Bonds* (1971) 20 Cal.App.3d 278, 281–282 [97 Cal.Rptr. 650]), hospital-patient (*Bundren v. Superior Court* (1983) 145 Cal.App.3d 784, 791–792 [193 Cal.Rptr. 671]), attorney-client (*McDaniel v. Gile* (1991) 230 Cal.App.3d 363, 373 [281 Cal.Rptr. 242]), collecting creditors (*Bundren, supra,* at p. 791, fn. 8), and religious institutions (*Molko, supra,* 46 Cal.3d at pp. 1122–1123).

"Emotional distress" includes any "highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, or worry." (*Fletcher, supra,* 10 Cal.App.3d at p. 397.)

"'One who has wrongfully and intentionally [suffered severe emotional distress] may recover compensatory damages even though he or she has suffered no physical injury,' and 'the right to compensation exists even though no monetary loss has been sustained.'" (*Grimes v. Carter* (1966) 241 Cal.App.2d 694, 699 [50 Cal.Rptr. 808].)

<u>a. Defendant Sutter Gould Medical Foundation is liable for the acts of its employees under the theory of respondeat superior.</u>

Under the theory of respondeat superior, a principal/employer is vicariously liable for an agent/employee's torts committed within the scope of agency/employment. (*Perez v. Van Groningen & Sons, Inc.* (1986) 41 Cal.3d 962, 967 [227 Cal.Rptr. 106, 719 P.2d 676].)

///
///
///
///

**PLAINTIFF BETH A. RHODES, M.D.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT BY DEFENDANT SUTTER GOULD MEDICAL FOUNDATION 15**

<u>D. Plaintiff has raised a genuine issue of fact as to the imposition of punitive damages based upon the fact that Roberta Edge was the Director of the Department of Imaging who reported directly to the Chief Operating Officer and on the basis of ratification of defendant's conduct.</u>

There is thus ratification and approval. *White v. Ultramar, Inc. (1999) 21 Cal.4th 563, 571-572, 88 Cal.Rptr.2d 19;* 6 Witkin, Summary Cal. Law 10th *Torts* § 1582; *Accardi v. Superior Court, supra, 17 Cal.App.4th 341; Sandoval v. Southern Calif. Enterprises (1950) 98 Cal.App.2d 240, 250, 219 P.2d 928* (employer failed to discharge or reprimand employees who attacked plaintiff); *Coates v. Construction & General Laborers Local N. 185 (1971) 15 Cal.App.3d 908, 915, 93 Cal.Rptr. 639* (union retained representatives with knowledge of their misconduct); *Kiseskey v. Carpenters' Trust, supra, 144 Cal.App.3d 222, 235* (allegation that agents of union were acting in course and scope and with permission and consent sufficient to support award against principal.)

Herein, plaintiff has submitted evidence of ratification in her Separate Statement in Opposition hereto.

Dated: January 14, 2013          LAW OFFICES OF STEPHEN M. MURPHY

                                          By    /s/ stephen j. purtill
                                                   Stephen J. Purtill
                                                   Attorneys for Plaintiff

**PLAINTIFF BETH A. RHODES, M.D.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT BY DEFENDANT SUTTER GOULD MEDICAL FOUNDATION 16**