```
 1
 2
 3
 4
 5
 6
 7
```

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| BETH A. RHODES, M.D., | NO. CIV. 2:12-0013 WBS DAD |
| Plaintiff, | |
| v. | MEMORANDUM AND ORDER RE: MOTIONS FOR SUMMARY JUDGMENT AND TO STRIKE |
| SUTTER HEALTH, a California Corporation, SUTTER GOULD MEDICAL FOUNDATION, a California Corporation, THE GOULD MEDICAL GROUP, INC., a California Corporation, | |
| Defendants. | |

Plaintiff Beth A. Rhodes brought this action against Sutter Health, Sutter Gould Medical Foundation ("SGMF"), and The Gould Medical Group, Inc. ("GMG") alleging unlawful retaliation, constructive discharge, gender harassment, gender discrimination, failure to prevent discrimination, violation of California Business and Professions Code section 2056, defamation, and intentional infliction of emotional distress ("IIED").

Presently before the court is SGMF's motion for summary

1

judgment on plaintiff's eleventh cause of action for IIED pursuant to Federal Rule of Civil Procedure 56.  Also before the court is SGMF's renewed motion to strike pursuant to Rule 56(c)(4).  For the complete factual background of this action, see the court's February 1, 2013, Order.  (Docket No. 112.)  The court recounts here only those facts relevant to plaintiff's remaining claim for IIED.

After plaintiff, a radiologist employed by GMG and working alongside SGMF staff, received a letter from the chairman of her department stating that she had acted unprofessionally in a meeting and that any further unprofessional behavior would be grounds for termination, several incidents involving plaintiff and SGMF staff transpired.[1]  First, a nurse eavesdropped on plaintiff and a patient. (Purtill Decl. Ex. C ("Edge Dep.") at 298:3-15 (Docket Nos. 85-3-86-1); Ex. 53 to Edge Dep. at Sealed 28-30 (Docket No. 82).)  Second, nurse Kathy Davis allegedly purposefully harmed a patient by failing to hold pressure at a breast biopsy site for fifteen minutes.  (Rhodes Decl. ¶¶ 2-3 (Docket No. 84).)  Davis also allegedly changed the pain scale score that the same patient had reported from "zero" to "one." (Id. ¶ 2.)

Third, technician Carolyn Plante allegedly intentionally performed a "Crown-Rump Length Measurement" incorrectly.  (Id. ¶ 6.)  Plaintiff alleges that Plante and

---

[1]   As noted in its prior order, the court recounts these events in the light most favorable to plaintiff.  Orr v. Bank of Am., NT & SA, 285 F.3d 764, 772 (9th Cir. 2002).  SGMF vigorously contests plaintiff's version of the facts and objects to the evidence used to support it.  SGMF's evidentiary objections are addressed below.

2

1  Davis did these things so that plaintiff would have an
2  inappropriate outburst in response and be fired.  (Id. ¶¶ 2, 6.)
3  As a result of these incidents, plaintiff felt anger, outrage,
4  anxiety, and humiliation.  (Id. ¶¶ 2, 7.)  She internalized those
5  feelings and alleges that they were a substantial factor in
6  causing her to go on medical disability on or about December 16,
7  2010.  (Id. ¶¶ 4, 8.)

8  Roberta Edge is the SGMF Director of Imaging.  (Edge
9  Dep. 21:15-16.)  She supervises both Davis and Plante and was
10 made aware of the two incidents involving those employees and
11 plaintiff.  (Id. at 239:1-17, 326:9-327:25.)

12 On February 1, 2013, the court granted summary
13 judgment in SGMF's favor as to plaintiff's claims for gender
14 harassment in violation of the California Fair Employment and
15 Housing Act ("FEHA"), sex discrimination in violation of FEHA,
16 retaliation in violation of FEHA, failure to prevent
17 discrimination in violation of FEHA, and constructive discharge
18 in violation of public policy.  (Feb. 1 Order at 25 (Docket No.
19 112).)  It declined to rule on SGMF's motion as to plaintiff's
20 eleventh claim for IIED until SGMF had the opportunity to  depose
21 Carol Frazier and file an amended reply, if it chose to do so.
22 (Id. at 25-26.)  SGMF has now deposed Frazier and filed its
23 amended reply, (Docket No. 118), along with a renewed motion to
24 strike Frazier's declaration, (Docket No. 120).  The court now
25 considers SGMF's motion for summary judgment as to plaintiff's
26 eleventh claim and its renewed motion to strike.
27 II.  Motion to Strike
28 SGMF renews its motion to strike the declaration of

3

Carol Frazier, (Docket No. 120), submitted by plaintiff in support of her opposition to SGMF's motion for summary judgment. SGMF argues that Frazier's deposition testimony revealed that she does not have personal knowledge of, and is not competent to testify about, most of the statements in her declaration. Rule 56(c)(4) provides that a "declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the . . . declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Federal Rule of Evidence 602 provides that "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."

     Neither rule gives reason to strike Frazier's declaration. Frazier states in her declaration that she observed Davis applying pressure to patient S.G.'s biopsy site. (Frazier Decl. at ¶¶ 5-8.) Thus, she has personal knowledge of and is competent to testify as to the incident. See Barthelemy v. Air Lines Pilots Ass'n, 897 F.2d 999, 1018 (9th Cir. 1990) ("[P]ersonal knowledge and competence to testify are reasonably inferred from [the declarants'] positions and the nature of their participation in the matters to which they swore."). Any evidence of a failing memory marked by her recent deposition goes to the weight to be accorded her testimony at trial and is not grounds for striking the declaration. See Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc., Civ. No. 03-1431 SBA, 2006 WL 1330000, at *6 n.6 (N.D. Cal. May 15, 2006) ("'Variations in a witness' testimony and any failure of memory through the course

4

1  of discovery create an issue of credibility as to which part of
2  the testimony should be given the greatest weight if credited at
3  all . . . [such] [i]ssues . . . are questions of fact which
4  require resolution by the trier of fact.'" (quoting Tippens v.
5  Celotex Corp, 805 F.2d 949, 953-54 (11th Cir. 1986))).
6  Accordingly, SGMF's motion must be denied.
7  III. Motion for Summary Judgment

8         Summary judgment is proper "if the movant shows that
9  there is no genuine dispute as to any material fact and the
10 movant is entitled to judgment as a matter of law." Fed. R. Civ.
11 P. 56(a). A material fact is one that could affect the outcome
12 of the suit, and a genuine issue is one that could permit a
13 reasonable jury to enter a verdict in the non-moving party's
14 favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248
15 (1986). The party moving for summary judgment bears the initial
16 burden of establishing the absence of a genuine issue of material
17 fact and can satisfy this burden by presenting evidence that
18 negates an essential element of the non-moving party's case.
19 Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).
20 Alternatively, the moving party can demonstrate that the
21 non-moving party cannot produce evidence to support an essential
22 element upon which it will bear the burden of proof at trial.
23 Id.

24        Once the moving party meets its initial burden, the
25 burden shifts to the non-moving party to "designate 'specific
26 facts showing that there is a genuine issue for trial.'" Id. at
27 324 (quoting then-Fed. R. Civ. P. 56(e)). To carry this burden,
28 the non-moving party must "do more than simply show that there is

some metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." <u>Anderson</u>, 477 U.S. at 252.

In deciding a summary judgment motion, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. <u>Id.</u> at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment . . . ." <u>Id.</u>

A. <u>Claim Eleven for IIED</u>

To prove a claim for IIED, a plaintiff must establish "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct . . . ."[2] <u>Christensen v. Superior Court</u>, 54 Cal. 3d 868, 903 (1991); see <u>Conley v. Roman Catholic Archbishop of S.F.</u>, 85

---

[2] SGMF requests that the court take judicial notice of a printout from the Health Library Section of the John Hopkins Medicine website. Plaintiff objects to this request. Under Rule 201 of the Federal Rules of Evidence, the court may take judicial notice of facts not subject to reasonable dispute because they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). The court need not rely on the printout to decide the motions before it and thus declines to decide SGMF's request.

6

Cal. App. 4th 1126, 1133 (2d Dist. 2000). The defendant's conduct "must . . . be directed at the plaintiff or [take place] in the presence of the plaintiff." Smith v. Pust, 19 Cal. App. 4th 263, 274 (4th Dist. 1993).[3]

To be outrageous, a defendant's conduct must be so extreme as to exceed all bounds of that usually tolerated in a civilized society. Schneider v. TRW, Inc., 938 F.2d 986, 992 (9th Cir. 1991); Hughes v. Pair, 46 Cal. 4th 1035, 1050-51 (2009). It must be "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" Helgeson v. Am. Int'l Grp., Inc., 44 F. Supp. 2d 1091, 1095 (S.D. Cal. 1999) (quoting Cochran v. Cochran, 65 Cal. App. 4th 488, 496 (2d Dist. 1998)). "'"Severe emotional distress" means emotional distress of such substantial quality or enduring quality that no reasonable [person] in civilized society should be expected to endure it.'" Young v. City of Visalia, 687 F. Supp. 2d 1155, 1168-69 (E.D. Cal. 2010) (Ishii, J.) (quoting Hughes, 46 Cal. 4th at 1051).

Plaintiff bases her claim for IIED against SGMF on the three incidents described in the factual background.[4] First, a

---

[3] Plaintiff includes the that actions by both SGMF and GMG employees as the basis of her IIED claim. (First Am. Compl. ("FAC") ¶¶ 151-56 (Docket No. 30).) The court here only considers incidents involving SGMF employees because plaintiff did not allege any theory under which SGMF could be liable for GMG employees' torts.

[4] SGMF raises evidentiary objections amounting to thirty-four pages to the declarations plaintiff submitted. Many of the objections focus on evidence related to plaintiff's IIED claim. But based on SGMF's repeated objections of relevance, lack of

nurse eavesdropped on plaintiff.  (Edge Dep. 298:3-15; Ex. 53 to Edge Dep. at Sealed 28-30.)  Second, in November 2010, Davis harmed an eighty-five-year-old patient, S.G., by disobeying plaintiff's standing order to hold pressure at S.G.'s breast biopsy site for fifteen minutes and thereby causing her to develop a painful hematoma.  (Rhodes Decl. ¶¶ 2-3.)  Davis also changed the pain score that S.G. had reported from "zero" to "one."  (Id. ¶ 2.)

Third, in September 2010, Plante, performed a "Crown-Rump Length Measurement" incorrectly.  (Id. ¶ 6.)  When plaintiff confronted her about it, Plante said, "'That's the way we measure it here.  Why don't you ask a radiologist?'"  (Id.)  Plaintiff contends Davis and Plante did these things to cause her to have an emotional outburst and be fired as a result.

The court need not further analyze several other incidents.  First, plaintiff alleges in her First Amended Complaint that SGMF employees Edge and Davis told other employees that plaintiff was a "bad element," that she was going to get GMG sued, and that she should be fired.  (First Am. Compl. ("FAC") ¶ 151 (Docket No. 30).)  Edge also allegedly told other employees

---

foundation, and prejudice, it is clear that these objections were designed to burden and harass plaintiff, who need not present evidence in admissible form on summary judgment.  See Burch v. Regents of Univ. of Cal., 433 F. Supp. 2d 1110, 1118-22 (E.D. Cal. 2006).  SGMF would be better served if its counsel centered on meaningful problems with the content of the evidence and allowed the court to focus on the merits of its arguments rather than parsing its legitimate evidentiary objections from its frivolous ones.

Regardless, the court has considered SGMF's evidentiary objections and makes its ruling in light of them.  Where it specifically relies on evidence to which SGMF has objected, the court rules on the pertinent objections.

8

that plaintiff was "under investigation" for the month of October.  (Id.)  However, plaintiff did not direct the court to any evidence suggesting that the statements regarding her work performance alleged to have been made by SGMF employees were actually made.  Nor are they discussed in her opposition.  In any event, such statements by themselves could hardly be said to constitute extreme and outrageous conduct.  Cf. Yurick v. Superior Court, 209 Cal. App. 3d 1116, 1128-30 (3d. Dist. 1989) (calling a coworker senile and a liar in front coworkers did not constitute outrageous behavior).  Second, plaintiff alleges that another SGMF employee, Jennifer Silva, refused to give plaintiff her mammography numbers.  (FAC ¶ 153.)  Plaintiff states, however, that ultimately she was satisfied with the timeliness of Silva's response to her request.  (McClain Decl. in Supp. of Reply Ex. A at 169:11-171:10 (Docket No. 96).)

It is the plaintiff's burden to prove a prima facie case of IIED; a defendant can seek summary judgment by "pointing out the absence of evidence to support plaintiff's claim." Dove v. PNS Stores, Inc., 982 F. Supp. 1420, 1425 (C.D. Cal. 1997).  The plaintiff may then defeat summary judgment by setting forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e).  SGMF contends that there are no triable issues of fact regarding plaintiff's remaining IIED claim because there is no evidence that SGMF employees engaged in outrageous conduct intended to cause plaintiff emotional distress or that plaintiff actually suffered emotional distress.  Plaintiff, however, establishes a prima facie case of IIED based on the incidents with Davis and Plante and sets forth facts showing that

there are genuine issues for trial.

As to the initial incident plaintiff points to, a SGMF employee eavesdropped on her when she was with a client. (Edge Dep. at 298:3-15; Sealed 28-30.) While unprofessional and inappropriate, it is hard to conclude that such conduct rises to that which is utterly intolerable in society. Cf. Helgeson, 44 F. Supp. 2d at 1095 (finding that employer's conduct, including threatening to place the plaintiff on a work program; not assigning the plaintiff a sufficient number of cases with which to meet her critical success goals; threatening to lay off the plaintiff; issuing the plaintiff two verbal reprimands that had no basis in fact; giving the plaintiff an inaccurate performance evaluation; and taking away assignments that were within the plaintiff's territory, were everyday management decisions that are "'not outrageous conduct beyond the bounds of human decency, but rather conduct essential to the welfare and prosperity of society'" (quoting Janken v. GM Hughes Elecs., 46 Cal. App. 4th 55, 80 (1st Dist. 1996))); Schneider, 938 F.2d at 992 (supervisor's yelling while criticizing employee's performance, threatening to throw employee out of the department, and making gestures employee interpreted as threatening was not outrageous conduct). Because the court finds that this action is not outrageous, it declines to address SGMF's evidentiary objections to the evidence plaintiff relies on to show the incident occurred.

As to the incident with Davis, however, plaintiff has stated that she had a standing order that required nurses to

10

apply pressure to a biopsy needle site for fifteen minutes.[5] (Rhodes Decl. ¶ 2.)  Davis states that she applied pressure to S.G.'s biopsy site for five minutes and was not aware of plaintiff's standing order.  (Purtill Decl. Ex. D ("Davis Dep.") at 315:3-9, 330:10-20, 332:13-16 (Docket No. 86-2).)  Frazier, S.G.'s daughter, also states that "Nurse Davis placed her hand over my mother's right breast for a minimal period of time, <u>no more than a minute or two minutes at most</u>."[6]  (Frazier Decl. ¶ 6 (emphasis in original).)  Although the parties dispute its cause, counsel for SGMF affirmed at oral argument that there is no dispute that S.G. did in fact develop a hematoma after the biopsy.

As to Plante's Crown-Rump Length measurement, Plante admits that she took the measurement incorrectly, although she states that she did so by mistake because she thought the length of the fetus was actually the width due to the early nature of the pregnancy.  (McClain Decl. in Supp. of Reply Ex. E at 216:5-

---

[5] SGMF's objections on personal knowledge and relevance grounds to Rhodes's statement that she had a standing order are overruled.

[6] SGMF objects to Frazier's identification of the nurse by name, arguing that the testimony lacks personal knowledge and foundation.  It also objects to Frazier's statement regarding the time Davis held pressure as irrelevant.  Frazier, however, identifies the basis of her knowledge and Frazier's statement is clearly relevant to whether Davis intended to hurt S.G.
SGMF also objects to Frazier's testimony regarding how she learned the identify of the nurse (plaintiff told her).  Frazier's statement is not offered, however, for the truth of the matter asserted (i.e., the nurse actually was Davis), but to show why Frazier believes the nurse treating her mother was Davis (whether or not she actually was).  Each objection is overruled.  Even if Frazier's testimony were not considered, Davis herself states that she held pressure for less than what plaintiff asserts her standing order required.

11

7, 216:17-22.)  Plaintiff states that when she pointed out the mistake, Plante responded to her "in a taunting tone: 'That's the way we measure it here.  Why don't you ask a radiologist?'"[7] (Rhodes Decl. ¶ 6.)

As unlikely as it may seem, if the jury finds that SGMF's employees purposefully injured a patient or measured a fetus incorrectly in order to cause the patient's doctor emotional distress, that would be outrageous.  Cf. Berkley v. Dowds, 152 Cal. App. 4th 518, 534 (2d Dist. 2007) ("Ordinarily, a medical diagnosis and treatment advice will not be considered outrageous unless they are false and given in bad faith." (emphasis added)); see Berkley v. Dowds, 152 Cal. App. 4th 518, 534 (2d Dist. 2007) ("Whether a defendant's conduct can reasonably be found to be outrageous is a question of law that must initially be determined by the court; if reasonable persons may differ, it is for the jury to determine whether the conduct was, in fact, outrageous.").

To support her inferences that Davis intentionally harmed a patient and Plante intentionally performed a medical measurement incorrectly, plaintiff first offers evidence that

---

[7] SGMF objects to these lines in plaintiff's declaration on grounds of hearsay, prejudice, lack of foundation, and relevance.  SGMF's attorneys obviously do not understand the hearsay rule.  This statement is neither offered nor considered as proof of the matter asserted.  Moreover, the statement from Plante is related to a matter within the scope of her employment, i.e., taking the measurement.  See Fed. R. Evid. 801(d)(2)(D) (statement is not hearsay when offered against an opposing party and "was made by the party's agent or employee on a matter within the scope of that relationship and while it existed"); Breneman v. Kennecott Corp., 799 F.2d 470, 473 (9th Cir. 1986) (statement by an employee of a party is admissible if the proffering party lays a foundation that shows the otherwise excludable statement relates to a matter within the scope of the agent's employment).

12

Davis departed from her standing order.[8]  Second, plaintiff offers evidence that Plante mocked her after she confronted Plante about the incorrect measurement.  This is sufficient evidence to support the inferences that Davis intentionally harmed a patient and Plante intentionally performed a medical measurement incorrectly.  The fact that Davis and Plante deny the malevolent intention plaintiff suggests they held is not conclusive, but only emphasizes that there is a factual dispute.[9]  The court finds that plaintiff has offered sufficient evidence to show that there is a genuine issue of fact whether the incidents she complains of constitute extreme and outrageous conduct.

Plaintiff must next establish that the SMGF employees "intended to cause or acted with a reckless disregard of the probability of causing emotional distress."  Dove, 982 F. Supp. at 1425.  She must also show that their conduct was "directed at the plaintiff or occur[red] in the presence of the plaintiff of whom defendant is aware."  Id. (citing Sabow v. United States, 93 F.3d 1445, 1454 (9th Cir. 1996)); see also Smith, 19 Cal. App. 4th at 263.  The record before the court suggests that there was animosity between Davis and Plante and plaintiff.  For example, on May 19, 2010, when Edge interviewed her staff about the GMG

---

[8] Davis testified that she held pressure to the biopsy site as long as was necessary to stop any bleeding.  (Davis Decl. in Supp. of Am. Reply ¶ 3.)  Regardless, the court assumes as true plaintiff's testimony that she had a standing order to apply pressure for fifteen minutes.  Davis's disregard of that order would support the inference that she intended to harm S.G.

[9] Contrary to SGMF's argument, plaintiff need not prove that Davis's not holding pressure at the biopsy site for fifteen minutes caused S.G.'s hematoma to defeat summary judgment.  At this stage, all plaintiff needs to show is that there is a disputed issue of fact whether Davis intended to harm S.G.

13

physicians, Davis complained about plaintiff, stating that "Dr. Rhodes doesn't like me occasionally and will not talk to me when she feels this way." (Purtill Decl. Ex. R.) Davis also reported in writing several incidents that she believed amounted to plaintiff creating a hostile work environment and, in December of 2010, filed a hostile work environment complaint against plaintiff. (Davis Dep. at 323:8-12 (Docket No. 86-2); Edge Dep. Ex. 30 at Sealed 12-13 (Docket No. 82); Davis Dep. Exs. 76 at Sealed 40-49, 78 at Sealed 54-55, 78A at Sealed 57-59 (Docket No. 82).) On May 25, 2010, Plante also reported to Edge several incidents with plaintiff, which suggested that they were not on goods terms.[10] (Edge Dep. Ex. 25 at Sealed 9-10 (Docket No. 82).) These facts tend to support the inference proffered by plaintiff that Davis and Plante intentionally harmed plaintiff's patients in order to cause plaintiff emotional harm.

SGMF argues that this is insufficient evidence to show that Davis and Plante directed their conduct at plaintiff and intended to cause her, or acted with reckless disregard of causing her, emotional distress. (Am. Reply at 7:7-9, 8:16-18 (Docket No. 118).) As an admission from Davis or Plante that either directed their actions at plaintiff or intended to cause her harm is unlikely to be forthcoming, it would be overly burdensome on summary judgment to require more evidence than plaintiff has offered here. Plaintiff has thus raised a material

---

[10] The court does not quote from the record of Edge's interview with Plante, as Plante stated during her deposition that she did not review the written record of the interview and it is not entirely reflective of what she said. (Purtill Decl. Ex. E at 98:12-19 (Docket No. 86-3).)

14

issue of disputed fact whether Davis and Plante aimed their conduct at plaintiff and acted with the purpose of causing her emotional distress.

SGMF does not argue that plaintiff has failed to show she suffered emotional distress. As to causation, plaintiff has declared that as a result of these incidents, she felt anger, outrage, anxiety, and humiliation.[11] (Rhodes Decl. ¶¶ 2, 4, 7-8.) She also declares that the incidents were a substantial cause in her taking medical leave. (Id. ¶¶ 4, 8.) This is sufficient evidence of causation to survive summary judgment. Cf. Simo v. Union of Needletrades, Indus. & Textile Emps., Sw. Dist. Council, 322 F.3d 602, 622 (9th Cir. 2003) (finding causation lacking when appellants did not testify that they suffered distress due to the harassing conduct of the union). Accordingly, SGMF's motion for summary judgment on plaintiff's claim for IIED must be denied.

B.  Punitive Damages

SGMF contests whether plaintiff can recover punitive damages for her IIED claim. In California, punitive damages are allowed "where it is proven by clear and convincing evidence that the defendant had been guilty of oppressions, fraud, or malice." Cal. Civ. Code § 3294(a). As for claims brought against a corporate employer:

> An employer shall not be liable for [punitive] damages . . . based upon acts of an employee of the employer, unless the employer had advance knowledge of the

---

[11] The court overrules SGMF's objections relating to how plaintiff felt after these incidents. Plaintiff has sufficient personal knowledge to testify to her own feelings. See Fed. R. Evid. 603.

15

> unfitness of the employee and employed him or her with a conscious disregard of the rights or safety of others or authorized or ratified the wrongful conduct for which the damages are awarded or was personally guilty of oppression, fraud, or malice.  With respect to a corporate employer, the advance knowledge and conscious disregard, authorization, ratification or act of oppression, fraud, or malice must be on the part of an officer, director, or managing agent of the corporation.

Id. § 3294(b).

Plaintiff argues that she has raised a genuine issue of fact whether punitive damages are available "based on the fact that Roberta Edge was the Director of the Department of Imaging who reported directly to the Chief Operating Officer and on the basis of ratification of defendant's conduct." (Opp'n at 13 (emphasis omitted).)

Here, there is no evidence that Edge was a SGMF officer or on the board of directors at SGMF.[12]  "The California Supreme Court has defined 'managing agent' within the meaning of California Civil Code [section] 3294(b) to be an employee with 'broad discretion' that exercises 'policymaking authority.'" Hergenroeder v. Travelers Prop. Cas. Ins. Co., 249 F.R.D. 595,

---

[12] Although the court could not find any California case explicitly defining "director" in section 3294(b), the term appears limited to an individual who is on the board of directors of a corporation. See Hartman v. Shell Oil Co., 68 Cal. App. 3d 240, 250 (4th Dist. 1977) ("It must be admitted there is no direct evidence of Shell's directors or officers--board members--authorizing or condoning the misrepresentations here involved. It would indeed be a startling bit of evidence if such did appear.")  If "director" did not have this limited meaning, it would seem to be duplicative of the term "managing agent," which the California courts have defined broadly.  The court in White v. Ultramar, Inc., 21 Cal. 4th 563 (1999), also noted that "the Legislature intended to limit application of section 3294 to employees who in fact exercise substantial authority over decisions that ultimately determine corporate policy." White, 21 Cal. 4th at 576.  There is no evidence that Edge had any such authority.

16

619 (E.D. Cal. 2008).  In White v. Ultramar, Inc., 21 Cal. 4th 563 (1999), the California Supreme clarified that "managing agents" are employees who "exercise substantial discretionary authority over decisions that ultimately determine corporate policy."  White, 21 Cal. 4th at 577.  "'[C]orporate policy' is the general principles which guide a corporation, or rules intended to be followed consistently over time in corporate operations."  Cruz v. HomeBase, 83 Cal. App. 4th 160, 167 (2d Dist. 2000).

          Although Edge's title is "Director of Imaging," she currently reports to Carol Turner, the Director of Specialty Physician Practices, who in turn reports to the Chief Operating Officer, Katherine Manuel.[13]  (McClain Decl. in Supp. of Reply Ex. B at 21:24-22:22 (Docket No. 96).)  Plaintiff provides no evidence to show that Edge had discretionary authority over decisions that ultimately determine corporate policy.  Plaintiff does point to the fact that Edge reported directly to Manuel, but this contention is not supported by the record.  She also explains that if employees in Imaging Services "had an issue," they would first report to their supervisor, then an intermediate supervisor, and then to Edge.  (Edge Dep. 68:6-19.)  The mere fact that Edge was at the top of a hierarchy for a segment of employees' complaints does not reveal if Edge then reported to anyone or whether she had to follow certain policies in resolving employee issues.  Without more it also does not show that she had broad discretion to make the kind of decisions that guide a

---

[13] Plaintiff provides the court with no information as to when Edge may have reported to a different individual.

1 corporation's operations.  A statement from GMG's Medical
2 Director, Dr. Mitnik, that Edge was part of the leadership of
3 SGMF likewise fails to show that she had the duties and
4 substantial independent authority to make decisions that
5 ultimately determined corporate policy.  (See Purtill Decl. Ex. I
6 at 49:4-10.)

7 Plaintiff also argues that by continuing to employ Edge
8 and Davis two months after their depositions, SGMF thereby
9 ratified their actions.  "[R]atification generally occurs where,
10 under the particular circumstances, the employer demonstrates an
11 intent to adopt or approve oppressive, fraudulent, or malicious
12 behavior by an employee in the performance of his job duties."
13 Coll. Hosp. Inc. v. Superior Court, 8 Cal. 4th 704, 726 (1994).
14 "Corporate ratification in the punitive damages context requires
15 actual knowledge of the conduct and its outrageous nature."  Id.
16 SGMF is not required to accept plaintiff's interpretation of the
17 incident involving Davis; it may believe that Davis did not
18 intend to harm a patient.  Moreover, SGMF may have reprimanded
19 Davis without terminating her and may have done the same to Edge
20 for her response to Davis's actions.  Without any additional
21 evidence, the fact of their continued employment at SGMF is not
22 enough to preclude summary judgment.  Accordingly, the court must
23 grant SGMF's motion for summary judgment as to plaintiff's
24 request for punitive damages.

25 IT IS THEREFORE ORDERED that defendant Sutter Gould
26 Medical Foundation's renewed motion to strike be, and the same
27 hereby is, DENIED; and

28 IT IS FURTHER ORDERED that defendant Sutter Gould

18

1  Medical Foundation's motion for summary judgment be, and the same
2  hereby is, DENIED as to plaintiff's eleventh claim for
3  intentional infliction of emotional distress and GRANTED as to
4  plaintiff's request for punitive damages.
5  DATED:  April 10, 2013

_____
WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE